in this matter. Your honors, the Illinois legislature has provided municipalities with the ability to create tax increment financing districts or TIF districts, but the authority to do so is not without limits. There are certain requirements that must be present and certain procedures that must be followed. These requirements and these procedures are neither cursory nor optional, and without meeting or following these requirements and that's exactly what happened here. The City of Crest Hill, in establishing the TIF district at issue, ignored the statutory requirements and procedures necessary to properly form a TIF district. So this case asks this court to answer the simple question of whether the City of Crest Hill should be allowed to benefit from their failure to follow the rules. The simple answer is no, and the trial court erred in allowing the City to do so. Now to get to that point, there's two main issues before court. The first, does the TIF district at issue contain the requisite contiguity as required under Illinois law? And second, did the City abide by the statutory provisions that are outlined in the TIF Act? I'll address each of those issues in turn. Starting with the contiguity argument, under the TIF Act at 65 ILCS 511-74.4-4a, the TIF Act requires a TIF district to be contiguous. However, the TIF Act itself does not contain a statutory definition of contiguity, so courts look to the common law. And that's where we get the substantial physical touching requirement that we see from the Henry County Board versus Village of Orion cases. And they do pull this definition from discussions of contiguity in both annexations, TIF districts, and other issues arising out of contiguity. But that is the common law definition. The Henry County Board case makes it clear that we're looking at the common law definition of contiguity, the physical, substantial physical touching. So the issue is had our lawmakers included the definition of contiguous, I can't say it, contiguous, then we wouldn't be here today. If the TIF Act contained an express definition, then that would guide the analysis. Which is why I smiled earlier while you were making your argument because we often find ourselves in these spots where our lawmakers don't really think about everything that needs to go into these acts. They get the big picture, but they don't get the minutia for us. But go ahead. Certainly. And sometimes when they do, they even make it more complicated than other times. That's true. But so what we're left with here is relying on that common law definition of substantial physical touching. And what other courts have looked at and what we know for certain is that it doesn't include point-to-point touching where you have cornering of intersections, and it doesn't include using a narrow strip of land or a street to establish contiguity. Those are the County of St. Clair cases and the Village of North Barrington case. Now, the important distinction here, again, as I mentioned, is that we're relying on the common law definition of contiguity. We're not relying on the annexation statutes as the city attempts to argue. You're just saying you have to have physical touching? Substantial physical touching. Correct. The common law definition is substantial physical touching. And you're saying in the facts of this case, it was not substantial or was there physical touching? I apologize, Your Honor. Under the facts, there's no physical touching whatsoever. And I'll get into that. Is that because of the pipeline? Correct. There is the pipeline right-of-way that essentially splits the tip district in half. You say it's a right-of-way. You know the difference between a right-of-way and fee simple ownership, don't you? Yes, Your Honor. Okay. So what is it? What you have is the utility pipeline has a utility right-of-way through that area. So it has an easement? I don't know if it's a recorded easement, Your Honor. I know that it is an established utility right-of-way. And that's what we look at under the... So right-of-way doesn't give the utility fee simple ownership? Is that what you're saying? It may. I am not certain in this case, Your Honor, what the ownership interest is. I know that it's... Wouldn't you think that's important because you're saying physical touching, you're saying there's none because there's a right-of-way with pipeline going down that piece of ground? It's not in this sense because one, it's excluded from the TIF district itself. And two, the substantial common boundary requires direct touching. And what we have here is a area that's excluded from the TIF district. Okay. Is that right-of-way a taxing parcel of ground? I believe it is, Your Honor. Yes. But you don't know? Not off the top. No, I can't say for certain right now. So, you know, that would be kind of important, wouldn't it? I don't think... Well, if the utility vacates, quote, the right-of-way, for example, we have this in railroad line abandonment cases, does that ground, underlying ground, revert back to the property owners? Under a true right-of-way, it would appear to be so. It could, Your Honor. But for the purposes of this analysis, we're looking at the way the TIF district was established. And that property is not in the TIF district. It's expressly excluded. And it's not relied upon to create the contiguity. And that's from the testimony of the city's witnesses itself. They expressly state that the only way that they establish contiguity is by jumping that right-of-way. And so what we need to look at and what the court needs to look at is what's the composition and how is the TIF district established when it was passed by the city of Crest Hill? So your argument is that they've excluded from the TIF district that piece of ground that underlies or contains a pipeline? That's part of it, yes. Without that property being within the TIF district, there is no direct substantial physical touching of the two areas that we're concerned with. And so that's what the court really needs to focus on. And that's the city's argument itself. And their own witness says, you know, we have 234.9 feet that we say is contiguous, but you still have to jump over this right-of-way. It doesn't touch the other side of the TIF district. Had the city come back to the table, there could be a TIF district with respect to parcels A and B. I'm excuse me, parcel C and parcel A. I mean, there could be a smaller TIF district, correct? Certainly, as long as it meets the contiguity requirements, they could have formed separate TIF districts. So we have B and C that everybody agrees would be contiguous. And we have a separate parcel. If I'm looking at the chart correctly, the larger part is A down below. But in order to get A joined with the smaller chunk, you got to jump the right-of-way, correct? The 74-acre portion to the northwest is the area that's not connected, correct? So you could split it up. I mean, they could decide to have a smaller TIF district, but they didn't come back to the table to discuss that with you. That's correct. They just simply plowed ahead, you know, ignoring the procedural aspects that we'll get to momentarily. But also, you know, the fact that there is this contiguity issue, that their consultant acknowledged in her deposition that, hey, if we're not relying on this statutory exception in the annexation statutes, we don't have contiguity. She admitted as much in her deposition. And so that's really what we need to look at is, and the city's position is, you know, if the court is looking at annexation cases to define contiguity, then the city believes the court should just adopt the entire annexation statute itself into the TIF Act. And that's an improper construction of what the legislature did. The TIF Act itself, like we said, doesn't contain the definition. Courts look to that common definition. And the Henry County case says it looks to annexation cases. It doesn't look to the annexation statute. In fact, the annexation statute itself doesn't even contain the substantial physical touching definition that's not in the annexation. So what we know- So substantial physical touching is a common law created definition. Is that correct? That's correct. Okay. And so that's what we applied to the TIF Act. And we have guidance from cases that talk about how, you know, over 500 feet may be substantial. We found in the Bull Valley case, the 297 feet wasn't adequate. And again, these are in cases where you have direct boundaries, direct contact with the two areas in question. This case, we don't have any of that direct physical touching. So at a minimum, it can't be substantial. And clearly there's no direct physical touching. Was the judge in error when he or she said there were 400 feet? I was a little bit confused by the judge's ruling because I don't see where 400 feet is in the record. I agree. And we didn't see where it was either, especially when you have the city's testimony that they relied specifically on the 239 feet in the area. So that's not really disputed for purposes of this appeal. We're talking about 239 or 240 feet alone. Nobody's claiming 400. From the district's position, yes. We're unclear where the judge got that 400 feet from because it's nowhere in the record and it's definitely not in the testimony from the city. So again, I think that alone shows that there was an error. But when we look at what is actually in there, the 239 feet clearly isn't significant and substantial enough to create the requisite contiguity, especially when you have to jump the right of way to have any contiguity. And that's uncontradicted facts based on testimony from the city's expert itself. That the city's witnesses all say they relied exclusively on that opinion and that testimony. Now, importantly, again, we talk about this right away because it plays a key role in the analysis. But the only way that comes into play is if you're looking under the annexation statute itself. And the annexation statute does have certain exceptions that allow you to jump right of ways to create contiguity. And again, that's language in the annexation statute. That's not language in the TIF Act and it's not the common law. When courts are looking to the common law definitions, they can't look to the express statutory exemptions in the annexation statute. And that's supported both by language in the TIF Act and by language in the annexation statutes itself. I mean, the annexation statute at section 711 of the Illinois Municipal Code states expressly for purposes of this article, of the annexation statutes, contiguity can be established by jumping a utility right of way. Again, for purposes of an annexation statute, for purposes of an annexation with an express exception. That's not incorporated into the TIF Act and it's not incorporated into the common law definition. And we see that again in the TIF Act itself, which has an express provision in section 4Q that allows for the sharing of revenues between separate TIF districts that are separated by a right of way. And again, that shows the legislature's intent that you can have two different TIF districts on either side of a right of way that are allowed to share revenues. But it would completely give no meaning to that language if you're allowed to have a single district that TIF district that jumps the right of ways. So let's get to the bottom line here. The objection of the school district is you really don't want this property taken off the tax rolls, right? Well, the objection of the school district is that the TIF wasn't properly constituted. Oh, I know the legal argument, but let's talk about the bottom line. I mean, that's the motivation, isn't it? Well, I don't know, your honor, that the motivation is relevant when we're talking about following law. Of course, when you have a TIF district that's gonna divert revenues from a taxing body, it's a concern, but the legislature has allowed for it. But they've allowed for it only when the proper procedures and processes- There's no question that they've allowed for it, Mr. Jablokie. The question is you're saying there is an error in their creating this TIF district and you're just basically did admit that they could have had two and shared the revenues and the school district would lose those revenues as a taxing body, right? Certainly, if they would have done it the right way. Okay, so the only flaw you see at this moment is that they didn't meet the common law definition of contiguity. That and the procedural arguments that are raised in our briefing- Which they didn't meet with the board after the board said no, right? Correct. And now is that mandatory? It is, it's mandatory under the TIF Act, yes. They're required to meet and confer, they're required to resubmit their plan or an amendment to the plan and they simply ignored it. The board doesn't have authority to deny the creation ultimately, even if they go through that conversation, so to speak. It's correct, but the legislature provided that procedure and if we simply ignore it and allow a municipality to say, oh, we passed it by a unanimous vote, then it eliminates the entire role of the Joint Revenue Board and the statutory procedure of the act. And is there any case law saying that at this point? Your Honor, if I may, I see my time's up, but I'll have to respond to your question. I'll let you, yeah, you could answer that and reply, I suppose, okay, yeah. Thank you. Thank you, Your Honor, thank you, Your Honor. Thank you, Mr. Richard, God bless you. Am I ready, Justice Litton, for me? Scott Hoster, on behalf of the city of Crest Hill, are you ready, Your Honors? We are, please proceed. Okay, thank you. Thank you, Justice Litton. My name is Scott Hoster and I represent the city of Crest Hill and in my conference room is my co-counsel, Mary Reardon, who wrote the TIF ordinance and handled the matter for the city of Crest Hill. Just a couple of things to begin with. These ordinances are presumed valid. It's the burden of the plaintiff by clear and convincing evidence to show that they aren't valid. Secondly, TIFs are authorized by the state legislature and we know that taxing bodies don't like TIFs because it diverts revenue from those taxing bodies. That's the way the law is. And one of the leading cases is a case that, Justice Litton, you were on the panel in 1996, the Henry County case is one of the lead cases on annexation and it has on TIFs and dealing with the annexation issue. And that's the case that talks about the fact that we don't want to have two different definitions of contiguity. And that case says we're going to use the annexation definition of contiguity for a TIF district and it doesn't make any sense to have two different definitions. The annexation statute, which is in the municipal code, allows the jumping of a right-of-way. We believe that's what you folks were talking about in 1996 when you decided Henry County. It's our position that there are not two different standards for contiguity in annexation and a different standard in TIF. Otherwise, a TIF district, if you're going to say that you can't jump a right-of-way, then TIF districts are going to be the boundaries are going to be settled by public right-of-ways. Just so we're clear, and to answer a couple of Justice Holdridge's questions, the pipeline owns that property. They pay taxes on it. And when the city of Crest Hill annexed all of this land, which is in the TIF district, which is in 2000 and 2002, they jumped the right-of-way. So that... Why do we call it, Mr. Hoster, a right-of-way when there's actual fee simple ownership in a distinct name, whatever that pipeline company is? Isn't that kind of confusing? Well, Justice Holdridge, I don't... Isn't it a separate fee simple ownership and taxable parcel of ground? It is owned by the utility and it is taxed, but the annexation statute says you can jump utilities, right-of-ways, things of that nature when you annex property. Well, that's if you got a right-of-way, Mr. Hoster. And I'm really always confused by the non-understanding of a right-of-way. Right, well, that's the common usage of, as I said, the way it seems to be written in the act is that you can jump the public utility, whether... Well, you can jump a right-of-way, but now we don't have a right-of-way here, right? Whether it's called a public utility, whether the utility owns it, that ownership by the utility. This was done in 2000 and 2002, pursuant to the municipal code, 20 years. They are in the city of Crest Hill and they've paid taxes. And the remedy, if somebody thinks this was done improperly 20 years ago, is to go to the state's attorney and the state's attorney has to file a co-warrantor case. Mr. Hoster, I'm sorry to interrupt, but I do have a question. I'm looking at the diagram and we have this big donut hole in the map, which is the excluded area. Is the excluded area and the pipeline right-of-way, is that annexed to Crest Hill? Has that been annexed? No, the pipeline is not in Crest Hill. So why not annex it first and then you don't have the problem? Well, it wasn't annexed 20 years ago. And I can't tell you why the city didn't do it 20 years ago, but it wasn't done 20 years ago. Why can't the city do it now? Well, it's not surrounded actually by... Because the map I'm looking at, and I guess I would ask the court because I want to try to answer one of your questions. The map, the first page of our appendix, Justice, we filed a big appendix with this and the first page of the appendix, if you have that, you will see what Judge Anderson was talking about. On the first page of the appendix, there's a parcel B and there's a parcel A. And you will see that when the pipeline is jumped, it says 405.7 feet. That's the 400 feet Judge Anderson was talking about in his opinion. So if I could direct your honors to that, that I hope clarifies why Judge Anderson decided what he decided. He looked at the 405.7 feet with parcel A and parcel B, and that was his basis of finding the contiguity. And Justice Wright, we cannot forcibly annex a piece of property if it's not completely surrounded. And so again, looking at the map I pointed you to in our appendix, you've got parcel A, you've got parcel B, you've got the right of way. And then there's another piece there. It looks like it runs north and south 922.76 feet. There's writing on it. It says ordinance 1149 adopted July 17th, 2000. That's not in the city of Crest Hill either. So since that pipeline is not completely surrounded by Crest Hill property, Crest Hill cannot forcibly annex that pipeline. Thank you for answering my questions, that helps. Okay, thank you, Justice. So we are taking the position that pursuant to the Henry County case, contiguity is the same in TIF and in annexation. And this property was annexed back 20 years ago. It's been in the city, they've paid their taxes. And so we believe the same standard ought to be used for both applications, annexation and TIF. Just to touch on the procedural issues that they were talking about. I would ask the court, if you look at page 17 of our brief and in the record it's C as in cat 1059, C as in cat 1059. That was when I deposed Mr. Simpkins, the superintendent of the Richland School District. And I asked him, basically he was the chairman of the joint review board. And I said, he answered page 17 of our brief. Our ideas were to enter into some kind of intergovernmental agreement of some sort with us as a taxing body for at least portions of the proceeds, should there be any from the TIF. So we wouldn't go 23 years with no increase. I mean, that was the entire basis of the joint review board not wanting this TIF. The remedy for that is to go to the state legislature, but the school districts lose money when TIFs are passed and property is in a TIF district. And so he made it very clear. So Ms. Reardon, if you look at the record, I mean, she did a primer or basically primer for the joint review board to, this is what you have to look at. If you have objections, these are the criteria. They didn't do any of that. I mean, the statement of objection that they wrote said, it's quote, not needed. And then the second thing, the second quote is it would have a negative impact on the taxing districts. Well, not needed is just a simple conclusion. They didn't look at any of the criteria and negative impact on the taxing districts. That's what the TIF Act says. And that's what your Henry County case says. That's what's gonna happen. So we followed the statute. There was no point in having one more meeting to meet and confer when they couldn't even tell us what they wanted other than revenue sharing. So that's why- Mr. Hofstra, is Mr. Jablecki correct that if this were to go back, if this were not found to be contiguous, that you could create two separate TIF districts, including parcel A being one and the other parcel being another? Well, I'm not exactly certain what one he's talking about. If he wants to cut out parcel B and A because we jumped it and have those two parcels cut out, I mean, I guess that would theoretically be possible, but I guess I'm not sure if they're cut out of the TIF, does that void the annexation? I don't know the answer to that question, but in theory, I guess those two parcels could be cut out if you were to find that you can't jump the pipeline. Justice Holder, this question, if I'm understanding it correctly, that was a little different. He's saying if we find in favor of the taxing body here, can you go back to the drawing board and create two separate TIF ordinances? What's preventing that? Well, we'd have to go back to the drawing board. I'm not sure where that would leave us. It would depend on what this panel did in terms of what property you struck and things of that nature. So I don't mean to be vague, Justice Wright, but I don't know how to answer that really without a ruling. I appreciate it. Well, parcel A only comes into this TIF district through that small area where it adjoins parcel B if you say that they're contiguous. Am I correct? Yeah, A is connected to B by the jumping of the utility. Right, so you could create a TIF second TIF district with parcel A, am I correct? You could have, I suppose, a TIF district with just parcel A in it if you found we couldn't jump it and include parcel B. I guess that's true, yes. Thank you. I think my time's about up, Justices. If there are any other questions, I'll do my best. Anybody have anything? I don't. I don't either. Thank you both. Thank you. Thank you, Mr. Foster and Mr. Ciaplacci. Any response? Thank you, yes. I just have a couple issues I want to touch on. I think it's really telling that the city's arguments all kind of rely on these red herrings about invalidating annexations and testimony from an individual superintendent rather than the joint review board itself. We're not seeking to invalidate an annexation. Again, under the law, we're not challenging an annexation. We're not challenging the statutory exemptions that are allowed to create contiguity for annexations. We're challenging the way that this tip district is laid out. And again, the 400 feet for annexation is not the same as the 239, 4.9 feet for the way this tip district is drawn out. And that's the distinction. And of course, the city wants to link the two together, but neither the law nor the facts do that. And so focusing on when these properties were annexed and how they were annexed is a complete misdirection by the city because- When I ask you, you say, of course they want to link them together. What's the advantage to the city to link them together as opposed to two tip districts? They want to link the arguments together, your honor. Oh, I'm sorry. I thought you were talking about the parcels. No, they want to. And maybe it's because of eligibility criteria and they feel that they may not be able to do separate. I can't speak to that. The only thing I can speak to is the requirements for the tip district as they have created it. And it's clear that the contiguity doesn't exist. And trying to tie that back into annexations from 20 years ago is just a distraction from what the actual issues of this case are. Similarly, when they talk about the testimony of Mr. Simpkins, he was testifying in this case as the superintendent of the school board. He wasn't testifying as a representative of the joint review board. There's only one vote on the joint review board. He doesn't control it. And his testimony was on behalf of the school district, not the joint review board. So certainly the school district has interests, but the procedures are for the joint review board and the statutory language, which to answer your honor's question from earlier, those statutory requirements are under case law, jurisdictional and mandatory. They must be followed. And when they didn't do that, when they didn't meet and confer after the negative recommendation, they violated those requirements. And them saying that the recommendation wasn't specific enough. Well, the TIF Act requires that the recommendation would be based on the redevelopment plan, satisfying the plan requirements and the eligibility criteria. And the JRB's negative recommendation expressly said that it does not meet the eligibility criteria and whether they felt it to be specific enough or not, that's not their job to determine the city's job. And that's contemplated by the act itself when it says they can merely resubmit the same plan. But what it doesn't say is they can ignore the requirements to meet and confer during that 30 day period. You know, they passed the ordinances on November 20th of 2017, when the negative recommendation came down on November 6th. You know, simply put, they could have waited two weeks. They could have met and conferred. They could have waited two weeks and they could have passed the ordinances at that time. But the clear and convincing evidence that Mr. Hoster says we need is in plain black and white. They passed the ordinance two weeks after the negative recommendation. They didn't wait 30 days. That's, simply put, that's as clear and convincing as it can be. They didn't follow the statutory procedures. So, yeah. I have a quick question based on the map that opposing council has directed my attention to. And that's the chart in Appellee's Appendix. In comparison to the other chart that I've been looking at, chart one, I think it was included in your brief, but I may be wrong. I think that the portion above Randitch Road, there's a small portion of the triangle. That's not included in the TIF at all, correct? Correct, correct. So, when the judge relied on the 400 feet, he actually went beyond the boundaries of the TIF. Yes, Your Honor. All right. So, absent any other questions, I have nothing further to add, Your Honors. Apparently, there are none. Thank you, Mr. Trespassi. Thank you both for your argument today. Thank you, Justice. It takes this manner of your advisement to badge with a written disposition.